STATE OF NORTH CAROLINA v. HARRY HOWELL.

(Filed 16 December, 1953.)

**1. Criminal Law § 78—**

G.S. 1-206 (3) provides that no exception need be taken to any ruling upon an objection to the admission of evidence, but the statute does not do away with the necessity of making an objection to the ruling of the court, and therefore exceptive assignments of error to the ruling of the court in

excluding testimony presents no question for decision when no objection was taken to the ruling of the court.

**2. Homicide § 27b—Charge held for error in placing burden on defendant to prove matters in mitigation beyond reasonable doubt.**

After charging the jury that if they were satisfied beyond a reasonable doubt from the State's evidence that defendant intentionally killed deceased with a deadly weapon, the law raised the presumptions that the killing was unlawful and that it was done with malice, constituting murder in the second degree, the court charged further that if the jury should find from the evidence beyond a reasonable doubt that defendant killed the deceased in the heat of passion by reason of sudden anger, defendant would be guilty of manslaughter, *is held* reversible error as placing the burden upon defendant to show beyond a reasonable doubt facts and circumstances sufficient to reduce the crime to manslaughter.

**3. Homicide § 16—**

An intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree, placing the burden upon defendant to prove to the satisfaction of the jury legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that will excuse it altogether on the ground of self-defense, accident, or misadventure.

**4. Criminal Law § 81c (2)—**

An erroneous instruction upon the burden of proof must be held for reversible error even though in another part of the charge the law be correctly stated, since the jury may have acted upon the incorrect instruction.

APPEAL by the defendant from *Hatch, Special J.,* May Special Term 1953. SCOTLAND.

Criminal action in which Harry Howell was tried upon a bill of indictment charging him with murder in the first degree of Larry Graham. New trial.

Since this case goes back for a new trial, we state only so much of the evidence as is requisite for the purposes of this appeal.

The State's evidence, after the defendant rested his case, tended to show these facts. On the night of 25 December 1952 Larry Graham, the deceased, and his wife with Sergeant Vernon E. Dodson of the U. S. Army, and his wife attended a dance in the Parachute Building at the Laurinburg-Maxton Air Base. About 2,000 or 2,500 people were present. The dance ended about 1:00 a.m., and Larry Graham and his party left the building to go to the Dodson's car in which they came. Floodlights were on in front of the building. Larry Graham had had no trouble with anyone there, and was unarmed. On the way to the car three or more men, all unidentified except the defendant Harry Howell, made an unprovoked assault on Graham knocking him down. Sergeant Dodson pulled one of these three men off of Graham while he was on his hands and knees

trying to get up. The deceased got to his feet, and backed up about 25 feet close to some parked cars. While Graham was standing there rubbing his head and saying "one at a time boys" the defendant Harry Howell standing 15 to 18 to 20 feet from Graham shot him with a pistol from which wound Graham was dead before he reached the hospital. There was also evidence for the State tending to show that Graham "was pushing himself up from the ground with his hands" when shot. The defendant admitted at the scene that he shot the deceased. Sergeant Dodson's testimony tended to show that he did not know the men assaulting Graham, nor the man he pulled off of him.

The defendant's evidence tended to show these facts. That he, the defendant, was about 25 feet in front of the building walking to his car. A woman had the deceased by his arm, and they were walking in front of the defendant. The deceased whirled around, and said "are you one of the s. o. b.'s wants to fight?", and knocked the defendant down. The deceased ran his hand in his right front pocket, and the defendant thought he was going to pull out a pistol and kill him. The defendant started to get up, and the deceased looked like this—the defendant indicated to the jury the position of Graham—whereupon the defendant shot him with a pistol. The defendant had not assaulted the deceased, nor had any prior trouble with him. The defendant offered several witnesses who gave evidence tending to show they were eye-witnesses who saw the deceased knock the defendant down, and the defendant shoot him. These witnesses were a brother of the defendant and his friends, except the witness Jerry Halton, who said he did not know the defendant nor the deceased. Halton testified that he was sitting in a car about 30 or 35 feet from where he saw a man jerk loose from a woman, go over, say something to a man, and knock him down. That the man who knocked the other man down, stepped back and reached with his right arm to his right pocket. The man knocked down got "to about one knee," and when the other reached for his right pocket shot him. When the defendant closed his case there had been no intimation in the evidence that Halton had assaulted Larry Graham, or had been near Graham.

The State in rebuttal recalled Sergeant Dodson to the stand who testified that he heard Jerry Halton testify, and Jerry Halton was the man he pulled off Larry Graham the night Graham was killed.

The defendant in rebuttal recalled Jerry Halton to the stand. One of the defendant's counsel said to the court "we have one more to put on in rebuttal." The court replied "No, sir. I asked you just now if that was the case." When that was said by the court, the record does not show. The defendant made no objection. However, the court sent the jury to their room, and in the absence of the jury Jerry Halton in response to questions asked him by the defendant's counsel gave evidence

tending to show that he did not assault Larry Graham nor anyone that night; that Sergeant Dodson did not pull him off Graham. The court said he would permit Halton to testify before the jury that Sergeant Dodson did not pull him off Larry Graham that night. The jury was recalled, and the court permitted counsel for the defendant to ask Halton this one question: "Q. Jerry, tell his Honor and the jury whether or not Sergeant Dodson or any other person pulled you off of Larry Graham or any other person at the dance, that were fighting, on the night of December 25th, or the morning of the 26th? A. No, sir. He nor anyone else pulled me off of anyone." The defendant made no objections to any of the rulings of the court in respect to the testimony of Jerry Halton, when he was recalled to the stand in rebuttal. After the trial the defendant entered exceptions Nos. 6 to 13, both inclusive, as to the rulings of the court in respect to the testimony of Jerry Halton when recalled in rebuttal. Each of these exceptions reads as follows in the record: "No formal exception was taken at the trial; but the defendant contends that an exception to the ruling of the court upon the above question was implied under the provisions of subsection 3 of G.S. 1-206."

The jury returned for its verdict: Guilty of murder in the second degree. Judgment: Confinement in the State's Prison at Raleigh for not less than 22 years and not more than 25 years.

Defendant appeals therefrom to Supreme Court assigning error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Gilbert Medlin, Joe M. Cox, Pittman & Webb, and Jennings G. King for defendant, appellant.*

PARKER, J. The defendant's assignments of error Nos. 2, 3, and 4, based on his exceptions Nos. 6 to 13, both inclusive, relate to the rulings of the court in excluding the testimony of Jerry Halton, and in permitting him to be asked only one question, when recalled in rebuttal. The defendant *did not object* to the rulings of the court *at the time,* but entered exceptions to these rulings after the trial when he prepared his statement of the case on appeal. The defendant vigorously contends in ten pages of his brief that these rulings of the court constitute reversible error; that "no exceptions were placed in the record at the time, but an exception was implied under the provisions of G.S. 1-206 (3)."

The general rule in criminal and civil cases is that exceptions to the evidence must be taken in apt time during the trial; if not, they are waived. *S. v. Ballard,* 79 N.C. 627; *Taylor v. Plummer,* 105 N.C. 56, 11 S.E. 266; *Lowe v. Elliott,* 107 N.C. 718, 12 S.E. 383; *Alley v. Howell,* 141 N.C. 113, 53 S.E. 821. It is too late after the trial to make excep-

tions to the evidence. *Alley v. Howell, supra; Hudson v. R. R.,* 176 N.C. 488, p. 496, 97 S.E. 388; *Ins. Co. v. Boddie,* 196 N.C. 666, 146 S.E. 598. These cases were decided prior to 1949. Ch. 150, S.L. 1949, now codified as G.S. 1-206 (3), is clear and plain. This statute provides that no exception need be taken to any ruling *upon an objection* to the admission of evidence, but it does not do away *with the necessity of making an objection* to the ruling of the court. *Cathey v. Shope,* 238 N.C. 345, 78 S.E. 2d 135; *S. v. Jenkins,* 234 N.C. 112, 66 S.E. 2d 819.

The defendant's assignments of error Nos. 2, 3 and 4 do not present any question for our decision, because the defendant has waived any rights he may have had by failing to object to the rulings of the court in apt time.

The defendant's assignment of error No. 12, based on his exception 21, is that the court erred in charging the jury as follows: "I charge you, Gentlemen, that if you find from the evidence or from the admissions of the defendant *beyond a reasonable. doubt* that the defendant, Harry Howell, killed the deceased, Larry Graham, that he killed him intentionally, that he killed him in the heat of passion by reason of anger suddenly aroused on account of the assault which deceased was making upon the defendant, Harry Howell, and before a sufficient time had elapsed for the passion to subside and reason to resume its habitual control, then the defendant would be guilty of manslaughter, and if you so find it would be your duty to render a verdict of guilty of manslaughter against the defendant unless the defendant has satisfied you that he killed the deceased, Larry Graham, in self-defense."

Immediately after the shooting the defendant admitted several times that he intentionally shot Larry Graham with a pistol, but that he did it in self-defense. He made the same admission when a witness for himself during the trial. The court instructed the jury that it could return one of five verdicts: either guilty of murder in the first degree, or guilty of murder in the first degree with a recommendation that the punishment shall be imprisonment for life in the State's prison, or guilty of murder in the second degree, or guilty of manslaughter, or not guilty. The State in its brief does not contend that there was no evidence tending to reduce the alleged crime to manslaughter. From the evidence introduced during the trial it was proper for the court to charge the jury they could return one of five verdicts.

A few sentences before the part of the charge above quoted and excepted to, the court charged "I charge you further, gentlemen, if you find from the evidence beyond a reasonable doubt, the burden being upon the State, that the defendant, Harry Howell, intentionally killed the deceased, Larry Graham, with a deadly weapon, to wit, a pistol, which I charge you again is a deadly weapon, the law immediately raises two presumptions

against the defendant: First, that the killing was unlawful, and secondly, that it was done with malice, and an unlawful killing with malice constitutes murder in the second degree. This presumption, however, may be rebutted." The court then stated the correct rule that under those circumstances the law casts upon the defendant the burden of showing to the satisfaction of the jury facts and circumstances sufficient to reduce the homicide to manslaughter or to excuse it.

However, in applying the law to the facts the court charged the jury that the defendant *must show beyond a reasonable doubt* facts and circumstances sufficient to reduce the crime to manslaughter, and in so charging the court committed prejudicial error.

Since the correction of an erroneous statement of the law inadvertently made in *S. v. Johnson*, 48 N.C. 266, by *S. v. Ellick*, 60 N.C. 450, and by *S. v. Willis*, 63 N.C. 26, it has been unquestioned law in this State that the intentional killing of a human being with a deadly weapon implies malice, and, if nothing else appears, constitutes murder in the second degree. The law then casts upon the defendant the burden of proving to the satisfaction of the jury—not by the greater weight of the evidence nor beyond a reasonable doubt—but simply to the satisfaction of the jury the legal provocation that will rob the crime of malice and thus reduce it to manslaughter, or that will excuse it altogether upon the grounds of self-defense, accident, or misadventure. *S. v. Carland*, 90 N.C. 668; *S. v. Little*, 178 N.C. 722, 100 S.E. 877; *S. v. Benson*, 183 N.C. 795, 111 S.E. 869; *S. v. Gregory*, 203 N.C. 528, 166 S.E. 387; *S. v. Terrell*, 212 N.C. 145, 193 S.E. 161; *S. v. Burrage*, 223 N.C. 129, 25 S.E. 2d 393; *S. v. Powell*, 238 N.C. 527.

Even if the court before and after in its charge stated the general principle of law correctly that the defendant must show to the satisfaction of the jury facts and circumstances sufficient to reduce the crime to manslaughter, yet that did not cure the error in the vital part of its charge when it applied the law to the facts, by requiring the defendant to show those facts beyond a reasonable doubt. This Court has uniformly held that where the court charges correctly in one part of the charge, and incorrectly in another part, it will cause a new trial, since the jury may have acted upon the incorrect part of the charge. *S. v. Morgan*, 136 N.C. 628, 48 S.E. 670; *S. v. Isley*, 221 N.C. 213, 19 S.E. 2d 875; *S. v. Johnson*, 227 N.C. 587, 42 S.E. 2d 685; *S. v. McDay*, 232 N.C. 388, 61 S.E. 2d 86; *S. v. Stroupe*, 238 N.C. 34, 76 S.E. 2d 313.

The State contends that the charge is supported by *S. v. Bright*, 237 N.C. 475, 75 S.E. 2d 407. That case is distinguishable for that defendant's defense was based on the theory of an accidental shooting.

Further exceptions to the charge raise serious questions, which it will not be necessary to discuss as this case goes back for a new trial.

The exception to the charge is well taken, and a new trial is ordered. New trial.