STATE v. DAVID McGIRT.

(Filed 15 January, 1965.)

**1. Homicide § 23—**

An instruction placing the burden on defendant to prove matters in mitigation or justification upon the State's evidence establishing beyond a reasonable doubt an intentional killing with a deadly weapon, is not error.

**2. Homicide § 27—**

The court's charge in respect to defendant's right to self-defense when assaulted in his own home *held* without error in this case.

APPEAL by defendant from *Carr, J.,* April 1964 Criminal Session of ROBESON.

Criminal prosecution on an indictment charging defendant David McGirt with murder in the first degree on 28 November 1963 of Charlie Calahan. G.S. 15-144. Before the jury was selected the solicitor for the State announced in open court that he would only request a con-

viction for murder in the second degree or manslaughter as the facts might appear. Plea: Not Guilty. Verdict: Guilty of murder in the second degree.

From a judgment of imprisonment in the State's prison, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General James F. Bullock.*

*L. J. Britt & Son by L. J. Britt and Robert Weinstein for defendant appellant.*

PER CURIAM. The State's evidence shows these facts: Defendant David McGirt and Modes McGirt were husband and wife, and lived in a house together. Charlie Calahan, after his release from serving a prison term in Florida, spent considerable time in defendant's home, in spite of defendant's protests. Defendant had also served a prison term for armed robbery. He (McGirt) had said "if he took one's life, he would take the other." On the night of 28 November 1963 Calahan brought to defendant's home a bottle of vodka and a bottle of whisky. Defendant, his wife, and Calahan were drinking the vodka and whisky. Verrell Ray, Evelyn Locklear, and a baby were present. There was a TV on in one room and a piccolo was playing in another. Calahan stood up and was dragging his feet as if dancing by himself in the room where the piccolo was playing. Defendant came into the piccolo room with a shotgun and said: "Charlie, I have got you where I want you." He then shot Calahan with the shotgun inflicting a wound causing death.

Defendant's evidence shows these facts: He had repeatedly asked Calahan to quit coming to his house, and had previously had an officer to carry him away. On the fatal night he drank no intoxicants. This is defendant's testimony as to the shooting:

> "At that time I was standing in the door leading into the living room. Charlie was standing about even with the piccolo, back toward the door leading into the living room. I would say he was about like from here to the corner of her desk (indicating Reporter's desk) from me. He said, 'I thought I told you you had to leave.' I said, 'I am not going anywhere.' He said, 'You are going somewhere, or one of us is going somewhere.' He put his hands in his pants' pocket. He was coming towards me. I had backed up some when he advanced toward me. He was pulling something out of his pocket. I reached out in the hall, right around

there. I had set the gun there. I set the gun there the day before
that. And so when I reached down and got the gun, he was right
at me, and just as I had turned around, he had it up coming at
me. I don't know whether it was a .25 or .22, or what it was. I
saw a weapon. When he said that, he was almost in reach of the
gun barrel. I didn't do a thing but just pulled the trigger, just
did have it up. I shot him to keep him from killing me, probably.
That's when I left."

Defendant has two assignments of error: each assigns as error a part
of the court's charge to the jury on self-defense, the defense upon which
defendant relies.

Defendant first assigns as error that the judge instructed the jury
in effect as follows: If the State has satisfied the jury beyond a rea-
sonable doubt that the defendant intentionally assaulted the deceased
with a deadly weapon, and such an assault caused death, there are
two presumptions that arise in the State's favor, (1) that it was an
unlawful killing and (2) that it was done with malice, and then the
burden is upon the defendant, not the State, to satisfy the jury, not
beyond a reasonable doubt nor by the greater weight of the evidence,
but merely to satisfy the jury of the legal provocation that will rob
the crime of malice and thus reduce it to manslaughter, or that will
excuse it altogether upon the grounds of self-defense. Defendant con-
tends this part of the charge is erroneous, in that it places a burden
upon defendant, and the burden of proof is always on the State, and
the charge as to burden of proof is conflicting. When an intentional
killing with a deadly weapon is admitted judicially in court by the de-
fendant or is proven by the State beyond a reasonable doubt, self-de-
fense is an affirmative plea, with the burden of satisfaction cast upon
the defendant. The assignment of error is overruled. The challenged
part of the charge is in strict accord with well-established law stated
in repeated decisions of the Court. *S. v. Benson,* 183 N.C. 795, 111 S.E.
869; *S. v. Utley,* 223 N.C. 39, 25 S.E. 2d 195; *S. v. Childress,* 228 N.C.
208, 45 S.E. 2d 42; *S. v. Jernigan,* 231 N.C. 338, 56 S.E. 2d 599; *S. v.
Howell,* 239 N.C. 78, 79 S.E. 2d 235; *S. v. Mangum,* 245 N.C. 323, 96
S.E. 2d 39. *S. v. Holloway,* 262 N.C. 753, 138 S.E. 2d 629, relied upon
by defendant is not in point because the instruction there challenged
was in respect to the recent possession of stolen property.

The second assignment of error is in respect to a defendant's right of
self-defense when he is assaulted in his own home, as defendant con-
tends he was here. This assignment of error is overruled. The judge's
charge in this respect is in substantial compliance with the law as
stated in the following decisions of the Court. *S. v. Harman,* 78 N.C.

515; *S. v. Roddey*, 219 N.C. 532, 14 S.E. 2d 526; *S. v. Miller*, 221 N.C. 356, 20 S.E. 2d 274; *S. v. Anderson*, 222 N.C. 148, 22 S.E. 2d 271; *S. v. Sally*, 233 N.C. 225, 63 S.E. 2d 151.

In the trial below we find

No error.